Young, J.
(dissenting). In this case, defendant admitted making 50 recordable compact discs (CD-Rs) containing approximately 70,000 to 80,000 pornographic pictures depicting boys from “toddlers to teens,” as well as videos depicting 12- to 13-year-old boys engaged in sexual acts. Within this compendious library of child pornography, multiple copies of one particular pornographic image formed the basis of the charges that were lodged against defendant for making child sexually abusive material.[1]
*685 The statute under which defendant was convicted plainly applies to any person who “makes” copies of child pornography.[2] Here, despite the uncontested proof that defendant made numerous copies of one particular pornographic image, the majority opinion reverses defendant’s convictions because it contends that he merely intended to possess the copied images “for personal use” and because the majority opinion finds it “simply untenable” that the Legislature would punish “those who download and maintain that material for personal use” as harshly as those involved in the “creation or origination” of child pornography.
However, the straightforward language of the statute is not limited to the original creator of the child pornography. Rather, MCL 750.145c(2) explicitly criminalizes making copies of child pornography, without requiring the prosecution to prove what the defendant intended to do with the child pornography once the crime had been committed, that is, once the copies had been made. Because the majority opinion relieves a defendant of criminal responsibility for making copies of child pornography “for personal use” and creates out of whole cloth an additional hurdle for those prosecuting individuals who make child pornography, I vigorously dissent.
The relevant portions of MCL 750.145c provide:
(2) A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges *686 for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both ....
(3) A person who distributes or promotes, or finances the distribution or promotion of, or receives for the purpose of distributing or promoting, or conspires, attempts, or prepares to distribute, receive, finance, or promote any child sexually abusive material or child sexually abusive activity is guilty of a felony, punishable by imprisonment for not more than 7 years, or a fine of not more than $50,000.00, or both....
(4) A person who knowingly possesses any child sexually abusive material is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $10,000.00, or both .... [Emphasis added.]
Also critical to interpreting the prohibition against making child pornography is the statutory definition of two relevant terms. “Child sexually abusive activity” is defined as “a child engaging in a listed sexual act,”[3] while “child sexually abusive material” is statutorily defined as
any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, *687 copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording.[4]
I agree with the majority opinion that MCL 750.145c establishes a graduated scheme of offenses and punishments. Broken down into its simplest terms, the statute provides a 20-year maximum sentence for those who make child pornography, a 7-year maximum sentence for those who distribute child pornography, and a 4-year maximum sentence for those who knowingly possess child pornography. It is the most severe sanction — the 20-year maximum sentence for those who make child pornography — that is at issue in this case.
MCL 750.145c(2) contains two distinct clauses, separated by the conjunction “or.” The first clause covers a person who “persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material.. . .” This clause penalizes those who cause a child to engage in a sexual act for the purpose of producing child pornography. These are the “creators” or “originators” of the child pornography, those whom the majority opinion acknowledges as having “direct contact with a minor.”
While the majority would prefer that the statute cease at the creators or originators of the child pornography, it does not. The second clause of MCL 750.145c(2) imposes criminal sanctions on a person who “arranges for, produces, makes, or finances. .. any child sexually abusive activity or child sexually abusive *688 material. . . ,”[5] (Emphasis added.) The latter portion of the statutory provision pertains to more than the child sexually abusive activity — significantly, it also relates to the child sexually abusive material. And that is a critical point in any effort to give full meaning to this statute.
As noted, “child sexually abusive material” is statutorily defined as any depiction of a child engaged in a sexual act. The statute uses broad language to cover a wide range of image formats, including images produced by electronic, mechanical, or other means, photographs, pictures, films, slides, videos, electronic visual images, books, and magazines. It also includes depictions on a computer diskette, a computer, or a computer storage device. Significantly, “child sexually abusive material” includes “any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording.”[6]
The definitive question in this case is quite simple: did defendant “produce [or] make” a “reproduction [or] copy” of an “electronic visual image,” a “computer, or computer-generated image,” or other “visual or print” medium when he took the deliberate action of copying “Jeff0015.jpg” to his computer hard drive? Unquestionably, the answer is yes. Defendant then took the additional, volitional steps of copying that image to his computer a second time, as well as copying it to several CD-Rs.
*689 The majority opinion’s conclusion that MCL 750.145c(2) is “primarily concerned” with punishing “the creation or origination” of child pornography and “not those who download” it “for personal use” has no basis in the language of the statute. Indeed, the majority opinion takes great pains to avoid noting or giving significance to the fact that by downloading and successively copying child pornography, defendant intentionally produced or made a “reproduction [or] copy” of the same illicit pornographic image five distinct times.
Forced to acknowledge that the plain language of the statute says what it says and that “a person may be charged with” “producing, making, or financing a copy of a computer-generated image” in a “manner indistinguishable from the person” who created the original image, the majority opinion nevertheless proceeds to write the second clause of MCL 750.145c(2) out of existence by concluding that a defendant’s ultimate plans for the child pornography negate the criminal prohibition regarding the method of acquisition.[7] Presumably, a defendant copying child pornography would only ever do so for one of two purposes — either to possess it for himself or to distribute it to others. Both of these purposes are reflected in MCL 750.145c(3) and (4), which provide for a 7-year maximum sentence for those who distribute child pornography and a 4-year maximum sentence for those who possess child pornog *690 raphy. Under the majority opinion, despite the clear mandate imposing a 20-year sentence on those who make copies of child pornography, a defendant who makes copies of child pornography will never face more than either 4 or 7 years’ imprisonment.
By holding that a defendant who makes copies of child pornography is guilty of only a 4-year felony when the copies are made “for personal use,” the majority opinion essentially holds that defendant’s criminal liability is limited to that of a mere possessor under MCL 750.145c(4). However, under the plain language of the statute, defendant is more than a mere possessor of child pornography. The majority’s holding is especially hard to square with the fact that defendant took the additional, volitional steps of copying the images to his computer and separately to CD-Rs. I believe that these actions fall squarely under MCL 750.145c(2) rather than MCL 750.145c(4). As the Court of Appeals opinion noted, it is certainly possible to possess child pornography without copying or reproducing the images. Indeed, defendant could have satisfied his yen for “personal use” of child pornography and “merely possessed” the images by viewing them on the Internet without actually copying the images to his computer twice and recopying the images to several entirely separate compact discs. However, once he copied an image, he clearly violated MCL 750.145c(2). While the majority opinion maintains that the originator of child pornography is “obviously more morally” and “more criminally” culpable than the copier of child pornography, nothing in the statutory scheme indicates that the Legislature shares the majority’s culpability assessment. Indeed, the clear language of the statute indicates that the Legislature has deemed that both are equally culpable, and certainly more culpable than a defendant who possesses an illicit image without having taken the additional step of copying it.
*691 The majority opinion also indicates that defendant’s making “5 copies of a single prohibited image” is insufficient as a matter of law to sustain defendant’s convictions. This is a conclusion that has absolutely no basis in the text of the statute. It is unclear to me why making five copies of an identical pornographic image of a minor is insufficient to sustain defendant’s convictions because the entirety of MCL 750.145c(2) contains no numerical minimum requirement concerning copies of child pornography. Making even a single copy of child pornography violates the statute. The reason the majority opinion makes no effort to explain the calculus involved in determining that making five copies is insufficient is because it simply cannot justify such a conclusion.
The majority opinion runs far afield in responding to this dissent — and naturally so because the statutory language is clear and the majority is forced to strain in order to justify its conclusion. Central to the majority opinion’s argument is its false conclusion that MCL 750.145c(2) is limited to the originator of child pornography. Thus, only those defendants having “direct contact with a minor” may be charged with violating MCL 750.145c(2). Not surprisingly, the majority opinion gives absolutely no meaning to the fact that the statute also encompasses those who make copies of child pornography, not merely those who “procured the child” and “placed the cameras in front of her.”
While the hyperbole comparing child pornography to downloading materials from the Internet in violation of federal copyright laws certainly makes for entertaining reading, it is equivalent to comparing apples to orangutans. The federal copyright laws encompass those who willfully infringe a copyright, which includes making *692 copies of the creator’s copyrighted material.[8] By including a “reproduction [or] copy” of pornographic child images in the definition of “child sexually abusive material,” the very material prohibited under MCL 750.145c(2), the Legislature has unambiguously indicated that one need not be the Cecil B. DeMille of child pornography in order to run afoul of MCL 750.145c(2) for “mak[ing]” child sexually abusive material.
I find nothing vexing, much less “simply untenable,” about our Legislature’s decision to place an increased sanction on defendants who make copies of child pornography, thereby increasing the net amount of child pornographic images in existence. Because there is no question that defendant intentionally made multiple copies of child pornography, his convictions were proper and should be affirmed. Because the majority opinion concludes otherwise, and because it creates additional hurdles to the prosecution of those who copy child pornography, I dissent.
Corrigan, J., concurred with Young, J.

 Five images, described as “Jeff0015.jpg,” were created on defendant’s laptop computer on October 5, 2002, and September 9, 2003, and found *685 on three separate CD-Rs created April 15, 2003, April 26, 2003, and June 11, 2003. The record also indicates that the Jeff0015.jpg file was attached to a November 28, 2003, e-mail. However, a computer forensic examiner testified that she was unable to determine whether defendant sent the e-mail or received it.

 MCL 750.145c(l)(m); MCL 750.145c(2).

 MCL 750.145c(l)(Z). When defendant created the images at issue, the definition was codified at MCL 750.145c(l)(k).

 MCL 750.145c(l)(m) (emphasis added). When defendant created the images, this definition was codified at MCL 750.145c(l)(Z).

 The statute also imposes criminal sanctions on one who “attempts or prepares or conspires to” arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material. MCL 750.145c(2).

 MCL 750.145c(l)(m).

 Our criminal code is replete with examples of crimes that have heightened consequences because of a defendant’s chosen method of committing the crime. For example, one who commits an assault is generally subject to a 93-day jail term for that misdemeanor. MCL 750.81. However, if the same assault is committed with a dangerous weapon, the crime is a four-year felony. MCL 750.82. If the analysis used in the majority opinion were applied to a felonious assault case, one would he forced to conclude that the defendant merely intended to commit a 93-day misdemeanor, not a four-year felony, despite the uncontested evidence that a dangerous weapon was used during the assault.

 Title 17 of the United States Code establishes a creator’s intellectual property rights in original works. 17 USC 102(a). The owner of the copyright has “the exclusive rights to do and to authorize ... to reproduce the copyrighted work in copies,” 17 USC 106(1), and “to distribute copies” of the copyrighted work, 17 USC 106(3). Federal law also establishes penalties for copyright infringement. It allows the copyright owner “to institute an action for any infringement,” 17 USC 501(b), including injunctive relief (17 USC 502), impounding prohibited material (17 USC 503), and damages (17 USC 504).
Federal law also criminalizes an intentional copyright infringement committed “for purposes of commercial advantage or private financial gain[.]” 17 USC 506(a)(1)(A). There is a three-tiered system of punishment, as provided in 18 USC 2319(b): a 5-year maximum sentence for reproducing or distributing at least 10 copies of one or more copyrighted works whose total retail value is greater than $2,500, a 10-year maximum for repeat felony offenders, and a 1-year maximum for any other case. Thus, making unauthorized “copies” is precisely the nature of a copyright infringement claim.